UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
PHILBERT GORRICK,

                     Plaintiff,

          - against -

NEW YORK CITY TRANSIT AUTHORITY,
                                Defendant.
------------------------------------------------------------------ x

**STATEMENT OF MATERIAL FACTS PURSUANT TO RULE 56.1**

07 CV 2529 (GBD)(AJP)

      Defendant New York City Transit Authority ("NYCTA") ("Defendant" or "NYCTA") by its attorneys, Ann Burton Goetcheus and Gena Usenheimer, of Counsel, submit the following Statement of Material Facts pursuant to Local Court Rule 56.1 of the Civil Rules for the Southern and Eastern Districts of New York:

      1.      Plaintiff is a former NYCTA Power Cable Maintainer who has sued Defendant alleging disability discrimination and retaliation under the Americans with Disabilities Act, New York State and New York City Human Rights laws. The Complaint in this action, "Complaint," is appended hereto as Attachment ("Att.") 1 and the Defendant's Answer as Att. 2.

      2.      The transcript of Plaintiff's Deposition, taken by Defendant on December 13, 2007, is appended hereto as Att. 3. It will be referenced as "Pltf. Tr."

      3.      Plaintiff was employed by NYCTA from 1991 to June 2007, initially in the title of Maintainer's Helper, group C, subsequently as a Light Maintainer and from 1993 to 2007, in the title, Power Cable Maintainer. Pltf. Tr. at 36-37. The employment records identified by Plaintiff at his deposition, *id.* at 36-45 as Def. Exhs. D, E and F are appended hereto as Atts. 4, 5, and 6 respectively. Att. 4 includes the job descriptions for

2007-9909
-#1049322

Light Maintainer and for Maintainer's Helper, Group C, and Att. 5, at D0989, documents Plaintiff's execution of his consent to appointment to a different civil service position in 1993.

4. Att. 6 is a description of the duties and responsibilities of the Power Cable Maintainer title. Pltf. Tr. at 45. A Power Cable Maintainer "maintains, installs, inspects tests, alters, and repairs the Transit Authority's power feeder and communications cable, both aerial and underground, between generating plants, substations and circuit breaker houses, between the main distribution frame room and telephone terminal boxes throughout the system, including low voltage control cables, manholes, duct lines and related appurtenances" on subway tracks and manholes, among other locations. Att. 6, Pltf. Tr. at 84.

5. The transcript of Gustave Rivera, Jr.'s Deposition, taken by Plaintiff on December 12, 2007, is appended hereto as Att. 23. Mr. Rivera is Director of the Maintenance of Way Office of Employee Support and Safety. His transcript will be referenced as "Rivera Tr."

6. A declaration by Mr. Rivera is also appended, that details the relationship between OSHA standards and NYCTA protective footwear standards and appends certain policy instructions, the report of a board of inquiry into the death of Thomas DiStefano, and the ANSI standard for protective footwear as Rivera Att. R-1 – R-4.

7. NYCTA Maintenance of Way Division requires Power Cable Maintainers to wear safety footwear. Track & Structures Department Policy Instruction TS6.50, Bates numbered D2979-89 that was in effect and applicable to Plaintiff in 2000 is appended as Att. R-1 to the Rivera Declaration. It was issued "around 1990," Rivera Tr.

at 14:17-23, Rivera Decl. ¶ 5, and it was referenced in the 2002 Opinion and Award issued in the first grievance arbitration concerning this matter, appended hereto as Att. 9, at p. 1. (*see* para 17 *infra*.)

8. This policy required that a Power Cable Maintainer wear approved footwear that met the following standards: "steel toe or equivalent, certified to meet or exceed ANSI Standard 241.1-PT83, Class 77 (I75 C/75); certified to meet or exceed ANSI Z41.3-PT83, electrical hazard." Att. R-1 at D2984, ANSI Standard appended as R-4.

9. Although TS6.50 was superseded in 2005, these requirements for safety footwear were retained and are still in effect. Rivera Tr. at 19:17-20:10. The departmental policy instruction about which Mr. Rivera testified at 15:19-25 is appended as Att. R-2 to the Rivera Decl.

10. Safety footwear is required because of the hazards to which Power Cable Maintainers are exposed in locations such as subway tracks, manholes, working with electrical cables and exposure to electrical hazards. Rivera Tr. at 18:6-19:11, Att. 6, Pltf. Tr. at 84, Rivera Decl. ¶ 4. The report of the inquiry into the fatal accident of Thomas DiStefano also describes some of these hazards. Att. R-3.

11. Mr. Rivera testified as to the hazards that footwear with reinforced toes protect against. "Q: Why is [a steel toe or comparable toe] necessary; what does it protect against? A: Impact, the nature of the track, the hardest nature of the track when you are walking the track, climbing ladders, handling tools to protect the employee's feet from impact with the falling objects." Rivera Tr. at 63:24-64:6.

3

12. The requirement that Power Cable Maintainers wear safety footwear is the least restrictive (and in fact the only) method to protect them from identified hazards in the workplace.

13. Plaintiff has a condition diagnosed as venous stasis. Att. 1 ¶ 9. This condition makes Plaintiff unable to wear the safety footwear required for Power Cable Maintainers by New York City Transit. Att. 1, Complaint ¶ 11, Pltf. Tr. at 12:23-13:18, 53:17-22, 79:19-21; 84:21-85:8.

14. Plaintiff also claims that his venous stasis prevents him from standing or walking for periods longer than eight hours. Pltf. Tr. at 19:25-20:6, 20:24-25:3.

15. Plaintiff has never claimed any difficulty with respect to the walking or standing requirements for Power Cable Maintainers. Plaintiff's EEOC Charge dated August 9, 2006 is appended as Att. 7. It states "I have always been able to perform the essential function of [the Power Cable Maintainer] job." *See also* Att. 1, Complaint ¶ 11.

16. Plaintiff's last day worked for Defendant was October 9, 2000. On that date, Plaintiff was suspended for failing to wear safety footwear that complied with NYCTA requirements. Att. 1 at ¶ 10, Disciplinary Action Notification dated October 26, 2000, Bates numbered D1356, marked as Def. Exh. R, is appended as Att. 8. *See also* Pltf. Tr. at 91:10-92:10.

17. Plaintiff's union, the Transport Workers Union, Local 100, ("TWU"), appealed his suspension to arbitration and a decision was issued in April 2002 that found "that the Authority's safety shoe rules and regulations are reasonable and have not been questioned in this case. All employees, including the Grievant, are subject to these rules

4

and regulations." This decision specifically referenced, at 1, the Policy Instruction TS6.50, appended to the Rivera Decl. as Att. R-1. In 2002, Plaintiff was restored to work, without back pay. 2002 Opinion and Award, Bates numbered D0408-17, marked as Def. Exh. Y, is appended as Att. 9, pp. 8-9. *See* Pltf. Tr. at 151:24-152:15.

18. The decision also stated, "[i]f a specialist finds that he cannot wear safety boots as a medical matter, the parties are directed to discuss the possibilities of a different job for the Grievant, one that does not require safety shoes, or placement on disability." *Id.* at 9.

19. Defendant's medical department thereafter referred Plaintiff to Dr. Jennifer Svahn, a vascular specialist. Pltf. Tr. at 158:22-159:2.

20. Plaintiff saw Dr. Svahn in 2002 at the direction of Defendant, while in June 2004 he saw Dr. Svahn on his own behalf. Transcript of Dr. Svahn's deposition on January 11, 2008 is appended as Att. 10, referenced as "Dr. Svahn Tr.," at 17: 20-18:2; 28:21-25; 38:25-40:8. Exhibits marked as B and C at Dr. Svahn's deposition are appended as Atts. 11 and 12 respectively.

21. In July 2006 the tripartite arbitration board issued an Opinion and Award, Bates numbered D2190-2201, marked as Def. Exh. JJ, appended hereto as Att. 13. *See* Pltf. Tr. at 180:2-16.

22. This award granted Plaintiff backpay for the period from May 22, 2002 to June 9, 2004, the date he saw Dr. Svahn for the second time, and denied him backpay from that date to the date of the order in 2006. The award directed that, "[w]ithin thirty (30) days of the date of this Opinion and Award, [Plaintiff] will report to the Medical Department for a return to work/fitness examination in light of his entire medical record,

including the most recent information from Dr. Svahn, and a determination as to whether the Grievant has a physical disability within the meaning of Section 2.16 [of the TWU Collective Bargaining Agreement with Defendant] and/or the Policy/Instruction for Reasonable Accommodations making him eligible for light or modified duty in his own title or reclassification to another title in which he could perform duties within his medical limitations." Att. 13 at 11-12.

23. On August 8, 2006, Plaintiff reported to his former work location and was informed there was no work available and he was referred to Defendant's Occupational Health Services Unit [also known as the "MAC" for Medical Assessment Center]. Pltf. Tr. at 181:4-182:17.

24. Plaintiff executed an EEOC charge of disability discrimination on August 9, 2006, alleging that the discrimination began with his suspension in October 2000 and that "the most recent or continuing discrimination took place" on "8/8/2006." The charge was stamped filed by the EEOC on August 10, 2006. EEOC Charge, marked as Def. Exh. A, is appended as Att. 7. *See* Pltf. Tr. at 182:5-184:22.

25. The event to which Plaintiff referred in his EEOC Charge that he executed on August 9, 2006 was the refusal of his employing department to reinstate him as he was not wearing the Authority's safety boots. *Id.* at 182:5-184:22.

26. The only alternative footwear that Plaintiff has ever proposed as a "reasonable accommodation" are work boots that do not meet the Authority's (and OSHA's) requirements, specifically lacking reinforced toes and a hardened, electric hazard resistant sole that meet the applicable ANSI standards. Pltf. Tr. at 13:2-23; 25:9-26:16; 75:9-14; 85:2-8; 86:17-87:23; 164:21-25; and 166:8-167:9.

27. On August 15, 2006, Plaintiff was examined by Dr. Genser, a physician with Defendant's Occupational Health Services Division, who found him temporarily restricted from work as a Power Cable Maintainer. Bates numbered D294, marked as Def. Exh. MM, appended hereto as Att. 14.

28. Dr. Genser requested Plaintiff to obtain an opinion letter from his personal physician concerning his ability "to wear OSHA approved safety shoes (hard soled safety work boots)," and return for examination on September 19, 2006. Att. 12, p. 3.

29. Dr. Svahn, by letter dated September 5, 2006, addressed to Dr. A. Genser, stated, "It remains my opinion as it has in all documented letters that I have sent over the last four years that Mr. Gorrick's medical condition prevents him from safely wearing the OSHA-approved shoes in order to avoid recurrent ulceration, which threatens the viability of his legs. Nothing has changed in his medical condition that would allow my opinion to change." Att. 11, pp. 5-6.

30. Plaintiff returned to Occupational Health Services on September 19, 2006 where he was found "restricted work, permanent." Pltf. Tr. at 190:16-191:11.

31. Plaintiff then proceeded to his department and was informed that it had no restricted duty work available consistent with his restrictions. Pltf. Tr. at 192:4-19.

32. By letter dated November 1, 2006, Defendant notified Plaintiff of an appointment for a medical examination on November 15, 2006 to determine his eligibility for reclassification to a title consistent with his restrictions. Pltf. Tr. at 195:11-196:5, letter dated November 1, 2006, from Stephen E. Perez, Manager, Office of Employee Support and Safety, MOW, Bates numbered D295, marked as Def. Exh. RR, appended hereto as Att. 15.

2007-9909
-#1049322-

33. Dr. Suzanne Lim of Occupational Health Services found Plaintiff medically eligible for consideration for reclassification to Transit Property Protection Agent and Station Agent with limitations on "areas requiring safety shoes, work on track/roadbed, any NYCTA vehicle." Pltf. Tr. at 197:11-198:11, referring to document marked as Def. Exh. SS, Bates numbered D1154-56, appended hereto as Att. 16.

34. By letter dated January 16, 2007 from Stephen E. Perez, Manager, Office of Employee Support and Safety, MOW, Defendant notified Plaintiff he had been placed on a waiting list for consideration for reclassification to Transit Property Protection Agent ("TPPA"). Att. 17, Bates numbered D1155-56

35. Mr. Perez asked Plaintiff to report for reclassification to TPPA and Plaintiff went to Defendant's Human Resources Department at 180 Livingston Street in Brooklyn. Pltf. Tr. at 199:13-200:9. Plaintiff received the documents, Bates numbered [P]0507-10,[1] marked as Def. Exh. TT, appended hereto as Att. 18, at that time. *Id.* The reclassification offer would have retained the hourly rate, $25.0150 per hour, Plaintiff received as a Power Cable Maintainer even though the wage rate for TPPA is lower.

36. Plaintiff refused the reclassification offer by refusing to sign the consent for change of title required by the New York City Department of Citywide Administrative Services ("DCAS") that administers the New York City Civil Service. Pltf. Tr. at 200:15-21, Att. 18.

37. By a letter dated February 13, 2007 to my colleague, Ms. Joyce Ellman, Plaintiff's attorney stated that Mr. Gorrick's "[e]xecution of the [DCAS] Request for Change of Title form could arguably waive some of Mr. Gorrick's discrimination claims"

8

that he had asserted in his EEOC Charge. Lichten 2/13/2007 letter to Ellman, Bates numbered D434A-35A is appended hereto as Att. 19.

38. By a letter from Declarant to Mr. Lichten dated February 14, 2007, Defendant notified Plaintiff that the DCAS "Request for Transfer or Redeployment and/or Change of Title" form was required by the New York City Division of Citywide Personnel Services; was not a waiver of Plaintiff's discrimination claims; and that Defendant would view a refusal of this offer of reclassification as a failure by Plaintiff to mitigate damages. 2/14/2007 Goetcheus letter to Lichten, Bates numbered D491 is appended hereto as Att. 20.

39. Plaintiff was notified of a further opportunity to report for work as a TPPA by letter dated March 28, 2007 from Mr. Perez and warned that failure to respond might result in termination of employment. Perez 3/28/2007 letter to Plaintiff, Bates numbered D499-500 is appended hereto as Att. 21.

40. Plaintiff did not respond to Mr. Perez's March 28, 2007 letter and, by letter dated May 18, 2007, Defendant notified him that his failure to respond would result in termination of his employment, effective June 4, 2007. This letter also notified Plaintiff of his rights under Civil Service Law § 73 to apply for reinstatement as a Power Cable Maintainer within one year of termination of his disability to the extent that he could perform the essential functions of his position with or without a reasonable accommodation. Perez 5/18/2007 letter to Plaintiff, Bates numbered D501, is appended hereto as Att. 22.

---

[1] Plaintiff's document production was Bates-numbered without prefixes. To clarify references at Plaintiff's deposition, with his counsel's consent, I added the prefix "P" to the numbers actually on the documents from Plaintiff's document production. *See* Pltf. Tr. at 73:5-12.

9

41.     Plaintiff's Verified Responses to Defendant's First Interrogatories, identified by Plaintiff at his deposition, at 50:9-51:10, Def. Exh. G, is appended hereto as Att. 25.

42.     Appended hereto as Att. 24 are Notices of Administrative Closure by the N.Y.C. Commission on Human Rights on the ground that NYCTA has been exempted from the operation of the discrimination provisions of the New York City Administrative Code pursuant to PAL § 1266(8), *Pinkston v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-AR-01-1010596-E (March 7, 2002); Notice of Administrative Closure, N.Y.C. Commission on Human Rights, *Aronica v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-AD-01-1010481-D (March 7, 2002); Notice of Administrative Closure, N.Y.C. Commission on Human Rights, *Gethers v. N.Y.C. Transit Auth.*, Cmplt. No. M-E-D-01-1010120-D (March 7, 2002); Notice of Administrative Closure, N.Y.C. Commission on Human Rights, *Lambey v. MTA New York City Transit Auth.*, Cmplt. No. M-E-LR-01-1011050-E (March 7, 2002).

43.     The Declaration of Gustave Rivera, Jr., concerning this matter is appended hereto, with its attachments R-1-R-4.

Dated: Brooklyn, New York
       February 19, 2007

Respectfully submitted,

Ann Burton Goetcheus, Esq.
Gena Usenheimer, Esq.
Office of the General Counsel
Attorneys for Defendant
130 Livingston Street, Rm. 1233-p
Brooklyn, New York 11201
(718) 694-3889
By: _____
**ANN BURTON GOETCHEUS**
Executive Agency Counsel

10

2007-9909
-#1049322-